### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

**In the matter of the Extradition of**      )
**GEORGE DAVID EXOO**               )            **Misc. No.: 5:07-0059**

### <u>MEMORANDUM OPINION AND ORDER</u>

The United States initiated this action for the extradition of George David Exoo, Relator

herein, to Ireland by filing a verified Complaint and Exhibits on June 22, 2007. (Document No. 3.)

The Exhibits include a copy of the June 13, 1983, Treaty on Extradition Between the United States

of America and Ireland and documents indicating that the Dublin Metropolitan District Court in the

County of the City of Dublin, Ireland, issued a Warrant to Arrest Relator on May 21, 2004, based

upon information provided by a police detective that Relator (1) aided and abetted and (2) counseled

the suicide of Ms. Rosemary Toole on or about January 25, 2002, in violation of Section 2(2) of

Ireland's Criminal Law (Suicide) Act, 1993. Section 2(2) of Ireland's Criminal Law (Suicide) Act,

1993, provides as follows:

> A person who aids, abets, counsels or procures the suicide of another . . . shall be
> guilty of an offense and shall be liable on conviction on indictment to imprisonment
> for a term not exceeding fourteen years.

The documents include the following "legal description of the offense":

> A person who aids, abets, counsels or procures the suicide of another shall be guilty
> of an offense. To aid is to give help, support or assistance. To abet is to incite,
> instigate or encourage. To counsel is to advise.

Article II of the Treaty establishes when offenses committed in those countries are extraditable as

follows:

> 1.      An offense shall be an extraditable offense only if it is punishable under the
> law of both Contracting Parties by imprisonment for a period of more than
> one year, or by a more severe penalty. * * *
> 2.      For the purpose of this Article, it shall not matter:

      (a)     whether the laws of the Contracting Parties place the offense within the same category of offense or denominate the offense by the same terminology; or

      (b)     whether the offense is one for which United States federal law requires proof of interstate transportation, or use of the mails or of other facilities affecting interstate or foreign commerce, such matters being merely for the purpose of establishing jurisdiction in a United States federal court.

   3.     Subject to the conditions set forth in paragraph 1 of this Article, extradition shall also be granted for attempt and conspiracy to commit, aiding, abetting, counseling, procuring, inciting, or otherwise being an accessory to the commission of, an offense referred to in paragraph 1.

The documents include a copy of the April 10, 1984, Letter of Submittal of United States Secretary of State George P. Shultz to President Reagan. The Letter of Submittal explains as follows respecting Article II of the Treaty:

> Article 2 permits extradition for any offense punishable under the laws of both States by imprisonment for more than one year. Instead of listing each offense for which extradition may be granted, as was United States practice until recently, this Treaty adopts the modern practice of permitting extradition for any crime punishable under the laws of both contracting Parties for a minimum period. This obviates the need to renegotiate or supplement the Treaty should both States pass laws covering new types of criminal activity, such as computer-related crimes.
>
> Article 2 also follows the practice of recent United States extradition treaties in indicating that the dual criminality standard should be interpreted liberally in order to effectuate the intent of the Parties that fugitives be brought to justice. Article 2 further provides that, if extradition is granted for an extraditable offense, it may also be granted for offenses which are punishable by less than a year's imprisonment.

The documents further include a summary of the factual basis for the charges against Relator in Ireland developed from the police report of Officer J. J. Keane and statements which Relator made during interviews with two Irish journalists and Ms. Tara Tuckwiller, a journalist with the Charleston Gazette, in early February, 2002, which are also provided and asserted as evidencing that Relator "played an active part in [Ms. Toole's] suicide." It is evident from the record that Relator, a minister, was affiliated with an organization known as the Compassionate Chaplaincy Foundation

2

which provided assistance to dying people. Relator provided instruction and spiritual support for people seeking to end their own lives. On January 22, 2002, after some correspondence with Ms. Toole, Relator traveled with a friend to Ireland to meet her. Ms. Toole, then 49 years old, suffered from mental and emotional and cardiac problems and had attempted suicide once before. Ms. Toole paid Relator and his friend $2,500 to cover their travel and lodging in Ireland. Ms. Toole had obtained pills and helium to accomplish her suicide. After traveling about with Ms. Toole for a day or so, Relator and his friend and Ms. Toole focused upon her suicide. On or about January 25, 2002, with Relator and his friend present, Ms. Toole went through a practice session and then took the pills, drank some alcohol and smoked a cigarette. Relator told her "OK, Rosemary, time to put down the cigarette if you don't mind." Ms. Toole then pulled a plastic bag down over her head which deprived her of oxygen and introduced the helium and soon died. Relator and his friend waited for a period of time to assure that Ms. Toole was dead and then, apparently without notifying authorities of Ms. Toole's death, went to Amsterdam and returned to the United States. Ms. Toole's body was discovered on January 26, 2002.[1]

---

[1] Article VIII, Sections 2 through 4 of the Treaty between the United States and Ireland provides that a request for extradition must contain certain certifications, documents and information as follows:

2.  The request for extradition shall contain:
    (a)  information which will help to establish the identity of the person sought;
    (b)  the location of the person if known or, if it is not known, a statement to that effect; and
    (c)  a brief statement of the facts of the case.
3.  Every request for extradition shall be supported by documents which contain:
    (a)  as accurate description as possible of the person sought, together with any other information which will assist in establishing the person's identity and nationality;
    (b)  a statement of the pertinent facts of the case, indicating as accurately

Pursuant to 18 U.S.C. § 3184, the Court issued a Warrant for the Arrest of Relator (Document Nos. 4 and 5.), and Relator was arrested on June 25, 2007 (Document No. 19.).[2] On June

---

as possible the time and place of the commission of the offense; and

(c)    the legal description of the offense and a statement of the maximum penalties therefor and the test of the law setting forth the offense or, where this is not possible, a statement of the relevant law.

4.    When the request for extradition relates to a person who has not been convicted, it shall also be supported:

(a)    by the original or an authenticated copy of the warrant of arrest, or equivalent order, issued by a competent authority of the Requesting State;

(b)    by the original or an authenticated copy of the complaint, information or indictment; and

(c)    in the case of a request emanating from Ireland, by a statement of facts, by way of affidavit or statutory declaration, setting forth reasonable grounds for believing that an offense has been committed and that the person sought committed it.

The Court finds that the request for Relator's extradition to Ireland is fully in conformity with the requirements of the Treaty.

[2] 18 U.S.C. § 3184 provides as follows:

Whenever there is a treaty or convention for extradition between the United States and any foreign government, or in cases arising under section 3181(b), any justice or judge of the United States, or any magistrate judge authorized to do so by a court of the United States, . . . may, upon complaint made under oath, charging any person found within his jurisdiction, with having committed within the jurisdiction of any such foreign government any of the crimes provided for by such treaty or convention, or provided for under section 3181(b), issue his warrant for the apprehension of the person so charged, that he may be brought before such justice, judge, or magistrate judge to the end that the evidence of criminality may be heard and considered. * * * If, on such hearing, he deems the evidence sufficient to sustain the charge under the provisions of the proper treaty or convention, or under section 3181(b), he shall certify the same, together with a copy of all testimony taken before him, to the Secretary of State, that a warrant may issue upon the requisition of the proper authorities of such foreign government, for the surrender of such person, according to the stipulations of the treaty or convention; and he shall issue his warrant for the commitment of the person so charged to the proper jail, there to remain until such surrender shall be made.

25, 2007, the United States filed a Motion to Detain Pending Extradition Hearing and Memorandum in Support. (Document Nos. 6 and 7.) Citing <u>Wright v. Henkel</u>, 190 U.S. 40, 62 - 63, 23 S.Ct. 781, 786 - 787, 47 L.Ed. 948 (1903), the United States asserts that "in international extradition proceedings there is a strong presumption against bail." (Document No. 7, p. 2.) Bail may not be granted, the United States contends, absent "special circumstances." (<u>Id.</u>, pp. 3 - 4.) Proof that Relator is not a flight risk does not meet the "special circumstances" test. (<u>Id.</u>, pp. 4 - 5.)

Relator made his initial appearance in Court on June 26, 2007, represented by Assistant Federal Public Defender Edward H. Weis, and the Court appointed Mr. Weis to represent Relator in all further proceedings. (Document No. 10.)

On June 27, 2007, the United States filed a Memorandum of Law of Extradition discussing the jurisdictional and procedural requirements for extradition. (Document No. 12.) The United States points out that the Court must determine, among other things, whether, in consideration of the offenses with which he is charged in Ireland, Relator is extraditable under the "dual criminality" provision contained in Article II of the Treaty. Under this provision, the Court must determine whether the offenses with which Relator is charged in Ireland are also punishable under the law of the United States by imprisonment for a period of more than one year or by a more severe penalty. The United States asserts that to determine whether dual criminality exists as between the law of Ireland and the law of the United States, the Court must look to federal law first. If there is no corresponding federal law, then the Court must look to the law of the State where Relator is found. If there is no corresponding law in the State where Relator is found, then the Court must look to the

law of the preponderance or majority of States.[3] The United States urges that the laws do not have to be exactly the same. The laws need only be similar. The focus is upon whether Relator's conduct as charged in Ireland is generally criminal under federal or West Virginia law or the law of the preponderance or majority of States. The United States concedes that federal and West Virginia law do not provide the requisite duality but contends that "a preponderance of the States criminalize assisted suicide." The United States contends that thirty-nine States criminalize assisted suicide and twenty-nine States criminalize aiding or assisting, helping to plan and/or providing the means or the knowledge of the means to commit suicide.  Of those twenty-nine States, the United States allows, one (Montana) has a statute making aiding suicide a crime when the suicide does not occur and two (Maine and Maryland) have statutes making assisting suicide punishable by imprisonment for a period not exceeding one year. The United States asserts that Montana's statute, which makes creating a substantial risk of death or serious bodily injury the offense of criminal endangerment, applies. The United States further points out that the Court must determine whether there is probable cause to believe that Relator violated the law of Ireland as alleged. The United States cites the Fourth Circuit's decision in <u>Peroff v. Hylton</u>, 542 F.2d 1247, 1249 (4th Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 787, 50 L.Ed.2d 778 (1977), in consideration of the authorization of Mr. Peroff's extradition to Sweden which provides as follows:

> The extradition hearing is not designed as a full trial. The purpose is to inquire into the presence of probable cause to believe that there has been a violation of one or

---

[3] The United States cites the Ninth Circuit's decisions in *Theron v. U. S. Marshal*, 832 F.2d 492, 496 (9th Cir. 1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988), *abrogated on other grounds*, *United States v. Wells*, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997),and *Cucuzzella v. Keliikoa*, 638 F.2d 105(9th Cir. 1981), and the Second Circuit's decision in *Hu Yau-Leung v. Soscia*, 649 F.2d 914, 918 (2nd Cir., 1981), *cert. denied*, 454 U.S. 971, 102 S.Ct. 519, 70 L.Ed.2d 389 (1981), as establishing this standard.

more of the criminal laws of the extraditing country, that the alleged conduct, if committed in the United States, would have been a violation of our criminal law, and that the extradited individual is the one sought by the foreign nation for trial on the charge of violation of its criminal laws.

On June 28, 2007, Relator filed an Application for Release Pending Extradition Proceedings and a Memorandum in Support. (Document Nos. 15 and 16.) Relator also submitted the letters of eight persons in support of his release. Relator asserts that "[w]here the accused shows a substantial legal ground on which there is a probability of success, this is a special circumstance which justifies release on bond." (Document No. 16, p. 2.) Relator argues that under the applicable legal standard, there is a high probability that the Court will find that the charge against him in Ireland is not an extraditable offense under the Treaty. Recognizing that the Treaty contains a dual criminality provision, Relator contends that the offense with which he is charged in Ireland must also be chargeable under the law of the United States. Relator states, citing <u>Wright v. Henkel</u>, that Courts may look to the law of the State where the accused resides or is held for extradition if there is no federal enactment criminalizing the conduct as charged in the country requesting extradition. Relator states that he "is a resident of West Virginia; West Virginia is the asylum State. Neither federal law nor West Virginia law makes aiding, abetting, counseling, or assisting a suicide criminal. Thus, it is unlikely that the United States, acting for Ireland, can demonstrate that the offense charged in Ireland is extraditable." (Document No. 16, p. 6.) Relator addresses the United States' position as it appears in its Memorandum on the Law of Extradition (Document No. 12.) that there is a third and broader tier of the analysis to determine whether the offense charged in the foreign country is extraditable when duality does not exist between that country's law and either federal law or the law of the State where the relator resides or is held for extradition, namely, that the Court may find that duality exists and the offense is extraditable when the offense as charged in the foreign country is

criminal under the law of the preponderance or majority of the States in this Country. Relator acknowledges that the Second and the Ninth Circuit Courts of Appeals have recognized this third tier of the analysis to determine if there is dual criminality as between the foreign country and the United States but only in *dicta* "which is neither controlling nor persuasive." (Document No. 16, pp. 6 - 8.)

On June 29, 2007, the Court held a hearing upon the United States' Motion to Detain Relator Pending Extradition Hearing. Essentially, the question presented was whether it appeared probable that dual criminality does not exist and Relator's extradition would therefore not be appropriate under the Treaty. More specifically, in view of the parties' acknowledgment that there is no duality as between the law of Ireland and federal or West Virginia law, the question presented was whether the Treaty permitted dual criminality to be assessed in consideration of the law of a preponderance of the States and, if so, it appeared probable that dual criminality does not exist as between the law of Ireland and the law of a preponderance of the States. Preliminary legal research indicated that several Courts have stated that, absent duality as between the law of the requesting State and federal law and the State where the relator is found, the Treaty language would permit an assessment of dual criminality in view of the law of a preponderance of the States. In view of this standard, the Court found that the question whether Relator should be detained or released pending the Court's decision respecting extradition was more legal than factual and concluded that while it was possible that dual criminality might not exist, it was not probable. For this reason, the Court granted the United States' Motion to detain Relator pending an extradition hearing and the Court's final decision upon the extradition request.

On August 6, 2007, the United States filed a Memorandum of Law on Dual Criminality. (Document No. 21.) The United States takes issue with Relator's position respecting the standard for determining dual criminality. Citing <u>Factor v. Laubenheimer</u>, 290 U.S. 276, 54 S.Ct. 191, 78 L.Ed. 315 (1933), and the Senate Report on Extradition Treaty with Ireland, the United States asserts that the Treaty must be liberally construed to effectuate the expectations of the parties.

On August 15, 2007, Relator filed a Memorandum in Opposition to Extradition. (Document No. 23.) Relator advocates a dual criminality analysis based upon the Treaty's "plain language" contending that the dual criminality provision in the United States' Extradition Treaty with Ireland requires consideration of whether his conduct as alleged in the criminal proceedings in Ireland is also a violation of federal law.[4] Relator states that "[i]n light of the recent expansion of federal criminal law, the development of dual criminality to focus on the criminality of the conduct alleged, and the failure of the Treaty to include violations of state law, the Treaty must be construed in accord with its plain language. The conduct alleged must violate the criminal laws of the Contracting Parties. The Contracting Parties are the United States and the Republic of Ireland." Relator argues alternatively that "[i]f the dual criminality requirement of the Treaty allows reference to State law, it must be the law of the State where the [Relator] is found, or the consensus of State laws." Relator points out that this case is not factually similar to <u>Factor v. Laubenheimer</u>. In <u>Factor</u>, the extradition treaty between the United States and Great Britain as supplemented included a list of extraditable offenses and the charged offense, receiving money known to have been obtained by fraud, was on

---

[4] Relator notes that a supplemental Extradition Treaty between the United States and Germany provides more broadly that "Extraditable offenses . . . are offenses which are punishable under the laws of both Contracting Parties. In determining what is an extraditable offense it shall not matter . . . whether dual criminality follows from Federal, State or [German] laws."

9

the list. Relator points out that the Supreme Court reached its decision in <u>Factor</u> in this context where the crime as charged in Great Britain was actually identified as an extraditable offense in the Treaty whereas the United States' Treaty with Ireland contains a general dual criminality provision. Relator's attorney further states that his research disclosed no case wherein a federal Court found that a general dual criminality requirement was met and a charged offense was therefore deemed extraditable when the offense as charged did not violate federal law or the law of the State where the relator was found. Relator cites <u>Freedman v. United States</u>, 437 F.Supp. 1252, 1262 (N.D.Ga. 1977), as considering federal law, the law of the State of Georgia and the law of a "healthy majority" of the States in determining whether the charge of giving a secret bribe in Canada was an extraditable offense under the Treaty. Relator advises that the offenses with which he is charged in Ireland are not felonious under federal law or the law of the District of Columbia, West Virginia and at least thirteen other States. Because federal and West Virginia law and the law of a "healthy majority" of States do not make the conduct with which he is charged in Ireland felonious, Relator urges, the dual criminality requirement is not met and the offense charged in Ireland is not extraditable. Relator goes on to assert that in determining whether a majority of the States make his conduct as charged in Ireland felonious, the Court must consider whether or not his alleged conduct meets all of the elements of each State's offense. Considering his alleged and admitted conduct, Relator claims, there is no duality respecting those States which by statute and/or judicial construction make causing, supplying the means or participating in a physical act culminating in suicide felonious because his "alleged participation in Ms. Toole's suicide was passive, not active. He did not supply any of the means to commit the suicide. He did not give her any physical assistance. Applying the prohibition to his mere sharing of knowledge of the means for a successful

suicide or giving Ms. Toole spiritual support would raise Free Speech concerns." Relator asserts that

there has been "judicial narrowing" of assisted suicide statutes in California, Colorado, New Mexico

and Oregon such that his conduct as alleged in Ireland would not be criminal there. Relator

concludes that his conduct as charged of aiding and abetting Ms. Toole's suicide is not felonious in

twenty-seven States. Thus, the dual criminality requirement is not met respecting that charge.

Respecting the second charge, namely, that he counseled Ms. Toole in committing suicide, Relator

states that ten States criminalize such conduct and the Rule of Speciality as set forth in Article XI

of the Treaty prohibits trial on this offense.[5]

On August 17, 2007, the Court held the extradition hearing. The United States offered the

testimony of a Special Agent of the FBI who interviewed Relator in 2002 and had a conversation

with him when he was arrested in June, 2007, respecting his affiliation with the Compassionate

Chaplaincy Foundation and Ms. Toole's suicide. The Court heard the parties' positions respecting

the analysis applicable in determining whether dual criminality exists. The parties maintained the

positions they had taken in their writings. Urging the Court to apply the "preponderance of the

states" test, the United States referred to the Assimilated Crimes Act, 18 U.S.C. § 13, suggesting that

the laws of the States are punishable federally under certain circumstances. Relator responded that

the Act does not criminalize and has no pertinence in these proceedings. Considering the law of the

States, the United States asserted that Relator "does not challenge 22 of those states . . .." The United

States urged that case law in four States having no statutes criminalizing assisting suicide –

Alabama, Massachusetts, North Carolina, and Ohio – indicates that assisting suicide could

---

[5] The Rule of Speciality as contained in the Treaty between the United States and Ireland at Article XI provides basically that the party requesting a person's extradition may only prosecute the person for the offense(s) for which extradition is sought and granted.

nevertheless be prosecuted under another statute as murder, for example, or common law. The United States' attorney then disputed Relator's claim that there is "judicial narrowing" of enactments criminalizing assisting suicide in California, Oregon, New Mexico and Colorado. Respecting Hawaii's statute which makes causing suicide a felony, the United States referred to 18 U.S.C. § 2(b) and contended that Relator "told [Ms. Toole] how to do it, he showed her how to do it, they practiced doing it, he told her when, he directed it to happen, and when it would . . ." and therefore caused Ms. Toole's suicide. The United States' attorney then discussed New Hampshire's statute which makes "[c]ausing or aiding suicide a Class B felony if the actor's conduct causes such suicide or attempted suicide. Otherwise, it is a misdemeanor." and Texas' statute which provides that aiding another in committing suicide " is a class C misdemeanor unless the actor's conduct causes suicide . . . in which event, the offense shall be a felony." The United States argued that the "causes suicide" language in these statutes should not be construed to limit the "aiding" language. It is a felony under these statutes, the United States contends, to aid or cause another in committing suicide when the aiding or causing results in the other's committing or attempting to commit suicide. It is a misdemeanor if the aiding or causing conduct does not result in suicide or a suicide attempt. The United States' attorney then discussed Georgia's statute which makes "[a]ny person [who] publicly advertises, offers, or holds himself or herself out as offering, that he or she will intentionally and actively assist another person in the commission of suicide , and commits any overt act to further that purpose . . . guilty of a felony." The United States introduced documents including information from the Compassionate Chaplaincy web page indicating that Relator held himself out as offering to assist people in committing suicide and referred to the reports of journalists of statements which Relator made to them to the same effect. Respecting the overt act requirement, the

United States' attorney stated that "[i]f we can draw an analogy to the federal conspiracy statute, which also requires an overt act, that overt act can be anything – any step. It does not have to be illegal. He engaged in e-mail conversations with Ms. Toole; he flew to Ireland; he showed her how to do it; he practiced it with her. Those were all overt acts. Those all satisfy the Georgia statute." Counsel for the United States then discussed the statutes of the remaining eight States – Illinois, Indiana, Kansas, Kentucky, Maryland, Rhode Island, South Carolina and Tennessee – which require participation in the physical act of committing suicide and argues that these statutes "require that a person participate in 'a' physical act by which the person commits suicide. It's not a requirement that it be 'the' particular act that actually results in the extinguishing of the human life." The United States claims that Relator's instructing Ms. Toole how to accomplish her suicide, practicing it with her and requiring her to put down her cigarette amounted to participating in physical acts which culminated in Ms. Toole's committing suicide. In concluding, the United States' attorney, Mr. Wright, referred to 18 U.S.C. § 2(a) as setting "the standard for determining what aiding and abetting is." The United States asserted that 42 States had statutes comparable to the law in Ireland under which Relator is charged.

In response, Relator's attorney urged that there is a difference between causing and aiding suicide stating that "[t]he law requires a person to cause a suicide, not in an aiding and abetting statute . . . but in a separate statute. The meaning for 'cause' is something that is far more proximate than facilitating. Some other statutes use that word. It is driving a person to suicide, for example. Causing is something which is not what Mr. Exoo did . . .." Based upon the distinction between causing and aiding, Relator asserted that his conduct would be a misdemeanor in New Hampshire and Texas. Relator then argued that he did not supply the physical means or participate in a physical

act which resulted in Ms. Toole's suicide or "intentionally and actively" assist in her suicide such that he had "direct and physical involvement, intervention, or participation" as the Georgia statute requires. In concluding his initial argument, Relator's attorney stated that "I don't think the government has shown a majority. I think it needs to show something more than a majority; I think it needs to show consensus."

On August 24, 2007, Relator filed a Supplemental Memorandum Against Extradition. (Document No. 26.) Relator contends that the Assimilated Crimes Act "does not demonstrate a judgment by the national legislature that any particular conduct is felonious. Rather, it incorporates the various judgments of the various state legislatures and applies them to federal reservations." (Id., p. 2.) Relator further asserts, contrary to the United States' claim at the extradition hearing, that assisting suicide is not a crime in North Carolina or Ohio and his conduct cannot be said to violate Massachusetts law to the extent that it can be determined from the case law. Additionally, Relator argues that his conduct was not felonious under the law of Hawaii, New Hampshire or Texas because he did not cause Ms. Toole's suicide and Georgia should not be counted against him because he did not offer direct and physical involvement, intervention or participation in the suicide.

## THE STANDARD

"Extradition is an executive, not a judicial, function. The power to extradite derives from the President's power to conduct foreign affairs. * * * An extradition proceeding is not an ordinary Article III case or controversy. It clearly is not a criminal proceeding. * * * Rather, the judiciary serves an independent review function delegated to it by the Executive and defined by statute."

14

Martin v. Warden, Atlanta Pen, 993 F.2d 824, 828 (11th Cir. 1993).[6] The Court is limited to

consideration of five factors in extradition proceedings, the first three of which are perfunctory:

1.   Whether the judicial officer is authorized to conduct extradition
     proceedings;[7]
2.   Whether the Court has jurisdiction over the relator;[8]
3.   Whether the applicable treaty is in full force and effect;[9]
4.   Whether the crime for which relator's surrender is sought is included within
     the terms of the treaty;
5.   Whether there is probable cause to believe that the crime for which relator's
     surrender is sought was committed and that relator participated in or
     committed it.[10]

Extradition of Garcia, 890 F. Supp. 914, 917 (S.D. Cal. 1994), *citing* Bringham v. Bradley, 241 U.S.

511, 36 S.Ct. 634, 60 L.Ed. 1136 (1916); McNamara v. Henkel, 226 U.S. 520, 33 S.Ct. 146, 57

L.Ed. 330 (1913), and Zanazanian v. United States, 729 F.2d 624 (9th Cir. 1980). Respecting the

fourth factor, it is important to recognize the principle enunciated by the United States Supreme

Court in Factor v. Laubenheimer, that treaties are to be construed liberally.

---

[6] As the Court pointed out in *Martin*, the Federal Rules of Criminal Procedure and the Federal Rules of Evidence do not apply. *See* Fed.R.Crim.P. 54(b)(5) and Fed.R.Evid. 1101(d)(3).

[7] The undersigned United States Magistrate Judge is authorized to preside over these extradition proceedings by virtue of the specific grant of authority upon the District Court's allowance contained in the extradition statute, 18 U.S.C. § 3184, and the District Court's Local Rule of Civil Procedure 72.1(e)(14)("(e) Magistrate judges are authorized to * * * (14) conduct extradition proceedings in accordance with 18 U.S.C. 3184[.]".

[8] 18 U.S.C. § 3184 provides that the Court has jurisdiction where the Relator is found. Relator was found in the Southern District of West Virginia.

[9] The July 13, 1983 Treaty on Extradition Between the United States of America and Ireland remains in full force and effect.

[10] There does not appear to be any dispute that probable cause exists to believe that the crimes for which Relator's surrender is sought were committed and that Relator participated in or committed them. Rather, the parties vigorously dispute whether the crimes for which Relator's surrender is sought are included within the terms of the Treaty.

> In choosing between conflicting interpretations of a treaty obligation, a narrow and restricted construction is to be avoided as not consonant with the principles deemed controlling in the interpretation of international agreements. Considerations which should govern diplomatic relations between nations, and the good faith of treaties, as well, require that their obligations should be liberally construed as to effect the apparent intention of the parties to secure equality and reciprocity between them. For that reason if a treaty fairly admits of two constructions, one restricting the rights which may be claimed under it, and the other enlarging it, the more liberal construction is to be preferred.

Factor, 290 U.S. 276, 293 - 294, 54 S.Ct. 191, 195 - 196, 78 L.Ed.2d 315 (1933). Dual criminality exists when the offense charged in the country seeking extradition "is generally recognized as criminal in both countries." Factor, 290 U.S. at 300, 54 S.Ct. at 198. It appears that a liberal approach is required in application as well. Thus, dual criminality is not determined strictly on the basis of a comparison of the laws of the requesting country and our federal law. Rather, as appears to have been first formulated and announced by the Court in Brauch v. Raiche, 618 F.2d at 851 (1st Cir. 1980), if there is no comparable federal law, it can entail the comparison of the law of the requesting party and the law of the State where the relator is found or "the law of the preponderance of the states." *See also* Cucuzzella v. Keiliikoa, 638 F.2d 105, 107 (9th Cir. 1981); Caplan v. Vokes, 649 F.2d 1336, 1344 fn. 16 (9th Cir. 1981); Theron v. U. S. Marshal, 832 F.2d 492, 495 - 496 (9th Cir. 1987), *cert. denied*, 486 U.S. 1059, 108 S.Ct. 2830, 100 L.Ed.2d 930 (1988), *abrogated on other grounds*, United States v. Wells, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997). Thus, the analytical framework for considering whether dual criminality exists in this case as urged by the United States was recognized before 1983 when the Treaty between the United States and Ireland was entered. The Court finds that one Court within the Fourth Circuit has utilized this analytical framework. United States v. Sai-Wah, 270 F.Supp.2d 748, 750 - 751 (W.D.N.C. 2003)("[T]he Government has failed to meet its burden, that is, that the Government has failed to establish

probable cause that the criminal offense *charged* in Hong Kong is a criminal offense under federal law, the laws of North Carolina, or the criminal laws of most of the states."(Emphasis in decision.)) Additionally, in considering whether there is dual criminality, it is not necessary that the laws of the requesting country and the United States be exactly the same. Rather, the Court must determine whether "[t]he two statutes are substantially analogous. * * * Absolute identity is not required." Wright v. Henkel, 190 U.S. 40, 58, 23 S.Ct. 781, 785, 47 L.Ed.2d 948 (1903). The Court must consider whether "[t]he essential character of the transaction is the same, and made criminal by both statutes." Id. It suffices if the statutes "relate to the same general offense", Peters v. Egnor, 888 F.2d 713, 719 (10th Cir. 1989), and "punish conduct falling within the broad scope of the offense . . .." Brauch v. Raiche, 618 F.2d 842, 852 (1st Cir. 1980). "[T]o satisfy the 'dual criminality' requirement, each element of the offense purportedly committed in a foreign country need not be identical to the elements of a similar offense in the United States. It is enough that the conduct involved is criminal in both countries." Russell v. United States, 789 F.2d 801, 803 (9th Cir. 1986), *citing* Kelly v. Griffin, 241 U.S. 6, 14, 36 S.Ct. 487, 489, 60 L.Ed.2d 861 (1916)(Where "the Canadian Criminal Code . . . defines perjury as covering false evidence in a judicial proceeding, 'whether such evidence is material or not.' . . . the treaty is not to be made a dead letter because some possible false statements might fall within the Canadian law that perhaps would not be perjury by the law of Illinois.") Thus, in determining if dual criminality exists when there is no comparable federal or State of asylum enactment, the Court must compare the laws of the country requesting extradition and the fifty States to determine if the conduct charged in the requesting country is punishable in a preponderance of the States.

In considering the fifth factor, the Court must consider factual evidence. The Court must determine whether there is sufficient evidence to support criminal charges covered by a valid treaty. If so and the Court is satisfied that the other four factors are met, the Court must certify to the Secretary of State that the relator is extraditable. Sidali v. Immigration and Naturalization Service, 107 F.3d 191, 195 (3d Cir. 1997). Humanitarian considerations are not within the province of the Court. *See* Cornejo-Barreto v. Seifert, 281 F.3d 1004, 1010 (9th Cir. 2000). Rather, they are for consideration of the Department of State. Extradition of Mainero, 990 F.Supp. 1208, 1230 (S.D.Cal. 1997). Certification that the relator is extraditable does not constitute a final order. Noel v. United States, 12 F.Supp.2d 1300, 1302 (M.D.Fla. 1998). The final decision to surrender the relator to the requesting state rests with the Department of State upon the Court's certification that relator is extraditable.

"Evidence sufficient to sustain the charge" is determined on the basis of probable cause in extradition proceedings. The probable cause standard is identical to the probable cause standard applicable in preliminary hearings in federal criminal proceedings under Rule 5.1(e) of the Federal Rules of Criminal Procedure. Sidali, *supra*, 107 F.3d at 199; Sindona v. Grant, 619 F.2d 167, 175 (2d Cir. 1980); Extradition of Cervantes Valles, 268 F. Supp.2d 758, 772 (S.D. Tex. 2003). Magistrate Judge Ramos defined the standard as follows in Extradition of Cervantes Valles, 268 F. Supp.2d at 772:

> Probable cause is the existence of reasonable grounds to believe the accused committed the offense charged. See Extradition of Diaz Medina, 210 F.Supp.2d at 817. This term signifies evidence sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief of the accused's guilt.

It appears that this definition is acceptable in the Fourth Circuit. The Court stated in Collier v. Vaccaro, 51 F.2d 17, 20 (4th Cir. 1931), reviewing the District Court's decision in an extradition

18

case, that "[i]t is for the . . . committing magistrate, to determine whether upon the evidence adduced before him there is reasonable ground to believe that the crime charged has been committed . . . ."

The Court has discretion within specific boundaries to admit and consider evidence on the issue of probable cause. Extradition of Kraiselburd, 786 F.2d 1395, 1399 (9th Cir. 1986). The Court may not admit and consider evidence submitted by Relator which merely conflicts with or contradicts evidence submitted by the United States on the issue of probable cause or impeaches the credibility of witnesses, but the Court may admit and consider explanatory evidence submitted by Relator if it would clearly negate or obliterate probable cause. Extradition of Koskotas, 127 F.R.D. 13, 25 (D.Mass 1989); Extradition of Garcia, 890 F.Supp. 914, 922 - 23 (S.D.Cal. 1994).

## DISCUSSION

In Washington v. Glucksberg, 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), the United States Supreme Court considered whether the enactment of the State of Washington making assisting suicide a crime violated principles of due process in the context of physician-assisted suicide. The Court stated that "[i]n almost every State – indeed, in almost every western democracy – it is a crime to assist a suicide." Id., 521 U.S. at 710, 117 S.Ct. at 2263. Considering whether New York's prohibition on assisting suicide violated the Equal Protection Clause also in the context of physician-assisted suicide, the Supreme Court stated in Vacco v. Quill, 521 U.S. 793, 117 S.Ct. 2293, 2295, 138 L.Ed.2d 834 (1997) that "[i]n New York, as in most States, it is a crime to aid another to commit or attempt suicide . . .." The Vacco Court's syllabus states that "[t]he distinction between letting a patient die and making that patient die is important, logical, rational, and well established: It comports with fundamental principles of causation . . . ; has been recognized, at least

implicitly, by this Court . . . ; and has been widely recognized and endorsed in the medical profession, the state courts, and the overwhelming majority of state legislatures, which, like New York's, have permitted the former while prohibiting the latter." Id., 521 U.S. at 793 - 794, 117 S.Ct. at 2295 (Citations omitted). The distinction recognized by the Supreme Court in Vacco between letting a person die which is permitted and making a person die which is not is to some extent reflected in State statutes making assisting suicide a crime as they have been found by the few State Courts which have discussed them to prohibit conduct causing suicide by providing the physical means to commit it. There is no indication in the case law of the States that being in attendance while a person commits suicide without more is a crime. This notwithstanding and though State Courts would likely take a much more restrictive approach, the Court will consider the legal concepts of "aiding" and "causing" as they appear in State statutes which criminalize assisting suicide as broadly as our law generally will allow in conformity with the liberality requirements which apply in these extradition proceedings.

Generally, the law of the United States and Ireland are conceptually consistent in defining aiding and abetting. 18 U.S.C. § 2(a) provides that "[w]hoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal." Association with and participation and assisting in a venture are within the scope of this statute. United States v. Horton, 921 F.2d 540, 543 (4th Cir. 1990), *cert. denied*, 501 U.S. 1234, 112 S.Ct. 14, 115 L.Ed.2d 1098 (1991). Thus, 18 U.S.C. § 2(a) makes one who aids, abets and counsels a criminal venture punishable as a principal. 18 U.S.C. § 2(b) provides that "[w]hoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal." It is clear from the structure of this statute,

with aiding and causing in separate subsections, that aiding and causing are distinct legal concepts, not synonymous. This is further evident from the Fourth Circuit's decision in United States v. Baker, 611 F.2d 961, 964 (4th Cir. 1979)("We . . . see no reason to conclude that, under § 2(a), one who aids another who is guilty of causing an offense under § 2(b), may not be guilty as an aider and abettor.") The Court's decision in this matter will hinge upon this distinction.[11]

　　　　As stated above, the legal description of the offense with which Relator is charged in Ireland is as follows:

> A person who aids, abets, counsels or procures the suicide of another shall be guilty of an offense. To aid is to give help, support or assistance. To abet is to incite, instigate or encourage. To counsel is to advise.

There is nothing in the legal description of the offense with which Relator is charged in Ireland indicating that it includes causing or participating in an act which results in suicide. Having established this, in conformity with the analytical framework and standard discussed above, the Court has examined and compared the law of Ireland and the fifty States to determine the extent to which the States' laws are "substantially analogous", "relate to the same general offense" or involve conduct which is criminal in both countries. Based upon this study, the Court finds, as the United States Supreme Court stated in Washington v. Glucksburg, that most States do indeed have enactments which make assisting suicide a crime. They criminalize conduct including helping to plan, advising, encouraging, soliciting, aiding, abetting, assisting, participating in a physical act or providing the physical means which results in suicide and/or causing suicide. These enactments fit

---

[11] The Court notes from the decisions of the few State Courts cited in footnotes hereafter which have considered the meaning of  "aiding" and "causing" as those words appear in their statutes criminalizing assisting suicide that they regard "aiding" as equivalent to "causing" suicide by providing the means of committing it.

into one of two categories: (1) statutes which make "aiding or causing" suicide a felony; and (2) statutes which make causing, providing the means and participating in an act resulting in suicide a felony.[12]

The Court finds that eleven States – Alabama, Idaho, Massachusetts, Nevada, North Carolina, Ohio, Utah, Vermont, Virginia, West Virginia and Wyoming – have no enactments which criminalize aiding, abetting, assisting or counseling suicide. Of these States, the United States contends that case law in Alabama, Massachusetts, North Carolina and Ohio indicates that assisting suicide may nevertheless be prosecuted. In <u>Lewis v. State</u>, 474 So.2d 766 (Ala. Cr. App.1985), the Alabama Court of Criminal Appeals considered defendant's conviction of criminally negligent homicide on the basis of the suicide of his friend's brother which occurred when the victim continued to play Russian roulette after defendant had quit and put the gun away. The Court stated that if defendant had been present when the victim shot himself, his "conduct of influencing the victim . . . would have been the cause-in-fact and the proximate cause of the victim's death." <u>Lewis</u>, 474 So.2d at 771. Focusing upon the fact that defendant was not present when the victim shot himself, the Court stated that "[a] determination as to whether the conduct of a person caused the suicide of another must necessarily include an examination of the victim's free will." <u>Id.</u> The Court held that "the victim's conduct was a supervening, intervening cause sufficient to break the chain of causation." <u>Id.</u> *See also* <u>McMahan v. State</u>, 168 Ala. 70, 53 So. 89 (1910). The United States further refers the Court to <u>Commonwealth v. Mink</u>, 123 Mass. 422 (1877), and <u>State v. Willis</u>, 255 N.C. 473, 121 S.E.2d 854 (1961). In <u>Willis</u>, 255 N.C. at 476, 121 S.E.2d at 856, the Supreme Court

_____

[12] Some States classify aiding or causing suicide as a separate and discrete offense while others consider aiding or causing suicide a type of homicide or manslaughter.

of North Carolina stated that "[o]ur Constitution and statutes have repealed and abrogated the common law as to suicide only as to punishment and possibly the quality of the offense. Suicide has perhaps been reduced to the grade of misdemeanor . . .." The Court stated that "[s]ince suicide is a crime, one who aids and abets another in, or is accessory before the fact to, selfmurder is amenable to the law." <u>Willis</u>, 255 N.C. at 477, 121 S.E.2d at 856 - 857. It appears from <u>Mink</u> that the law in Massachusetts may be in a similar state of affairs. While aiding and abetting suicide may be recognized as a crime, there is no indication of how it is punished. The United States also relies upon <u>Blackburn v. State</u>, 23 Ohio St. 146 (1872), in claiming that assisting suicide may be prosecuted in Ohio though there is no statute criminalizing it. Considering whether the Trial Court properly instructed the Jury where defendant was accused of providing a person poison so that she could commit suicide, the <u>Blackburn</u> Court stated that "[i]f the prisoner furnished the poison to the deceased for the purpose and with the intent that she should with it commit suicide; or, if he did not furnish the poison, but was present at the taking thereof by the deceased, participating, by persuasion, force, threats, or otherwise, in the taking thereof . . .; then, in either of the cases supposed, he administered the poison to her within the meaning of the statute [making administering poison a crime]. Her act of *taking* and *swallowing* it, in his presence and by his direction, was his act of *administering* it." <u>Blackburn</u>, 23 Ohio St. at 163 (Emphasis in decision). The Court then stated that "[i]t is said by counsel that suicide is no crime by the laws of Ohio, and that therefore there can be no accessories or principals in the second degree in suicide. This is true. But the real criminal act charged here is not *suicide*, but the *administering of poison*." <u>Blackburn</u>, 23 Ohio St. at 163 - 164 (Emphasis in decision). Otherwise, the Court has found that Ohio has announced by statute that "[a]ssisting suicide is . . . declared to be against the public policy of the state." Ohio Rev. Code §

23

3795.02(A). Under Ohio Rev. Code § 3795.01(A), "Assisting suicide" means "(1) Providing the physical means by which the person commits or attempts to commit suicide; (2) Participating in a physical act by which the person commits or attempts to commit suicide." Ohio Rev. Code § 3795.02(B) provides that the Ohio Courts of Common Pleas may enjoin anyone assisting suicide. The Court finds that the above cases do not define the law in Alabama, Massachusetts, North Carolina or Ohio sufficiently for the Court to determine whether (1) the law in those States is comparable to the law of Ireland under which Relator is charged and (2) whether Relator's conduct as charged in Ireland would be punished as a felony in those States. The Court therefore rules them out in the dual criminality determination.

The following 25 States criminalize aiding, abetting and/or assisting suicide without indicating more specifically what level of conduct is prohibited [13]:

1. Alaska Stat. § 11.41.120 – (a) A person commits the crime of manslaughter if the person . . . (2) intentionally aids another person to commit suicide[.];

2. Ariz. Rev. Stat. Ann. § 13-1103 – A. A person commits manslaughter by: . . . 3. Intentionally aiding another to commit suicide[.];

3. Ark. Code Ann. § 5-10-104 – (a) A person commits manslaughter if: . . . (2) The

---

[13] The Court notes that Model Penal Code § 210.5 provides as follows respecting causing or aiding suicide:

(1) **Causing Suicide as Criminal Homicide.** A person may be convicted of criminal homicide for causing another to commit suicide only if he purposely causes such suicide by force, duress or deception.

(2) **Aiding or Soliciting Suicide as an Independent Offense.** A person who purposely aids or solicits another to commit suicide is guilty of a felony of the second degree if his conduct causes such suicide or an attempted suicide, and otherwise of a misdemeanor.

person purposely causes or aids another person to commit suicide[.];[14]

4. Cal. Penal Code § 401 – Every person who deliberately aids, or advises, or encourages another to commit suicide, is guilty of a felony.[15];

5. Colo. Rev. Stat. Ann. § 18-3-104 – (1) A person commits the crime of manslaughter if: . . . (b) Such person intentionally causes or aids another person to commit suicide.[16];

6. Conn. Gen. Stat. Ann. § 53a-56 – (a) A person is guilty of manslaughter in the second degree when: . . . (2) he intentionally causes or aids another person, other than by force, duress or deception, to commit suicide.;

7. Del. Code Ann. Tit. 11, § 645 – A person is guilty of promoting suicide when the person intentionally causes or aids another person to attempt suicide, or when the person intentionally aids another person to commit suicide.;

8. Fla. Stat. Ann. § 728.08 – Every person deliberately assisting another in the commission of self-murder shall be guilty of manslaughter . . ..;

9. Iowa Code Ann. § 707A.2 – A person commits a class "C" felony if the person intentionally or knowingly assists, solicits, or incites another person to commit or

---

[14] Based upon the discussion above of "aiding " and causing" as legally distinct, the Court assumes, solely for purposes of these extradition proceedings and more particularly to conform to the liberality requirements of the Treaty and the law, that "aiding" and "causing" are likewise legally distinct in this and other statutes containing the language "causing or aiding" suicide though, as noted above, State Court decisions equate "aiding" with "causing"by providing the mean to commit suicide. Because "aiding" and "causing" are referred to in the disjunctive, the Court finds, strictly for the purpose of these proceedings, that these statutes contemplate a range of conduct from aiding through causing and includes them in this category of State statutes which, as the Court ultimately determines, are "substantially analogous"and "relate to the same general offense" and generally criminalize the same conduct which Relator is charged with committing in Ireland.

[15] In *People v. Cleaves*, 229 Cal.App.3d 367,375, 280 Cal.Rptr. 146, 150 (1991), the Court stated, quoting *People v. Matlock*, 51 Cal.2d 682, 694, 336 P.2d 505 (1959), that "'[t]he statute . . . does not contemplate active participation by one in the overt act directly causing death. It contemplates some participation in the events leading up to the commission of the final overt act, such as furnishing the means for bringing about death, - the gun, the knife, the poison, or providing the water, for the use of the person who himself commits the act of self-murder.'"

[16] In *People v. Gordon*, 32 P.3d 575, 578 - 579 (Colo. App. 2001), the Court stated that "'aids another *to* commit suicide' . . . evidences a clear and unambiguous intent to penalize only persons who provide indirect types of aid or assistance who go forward and kill themselves."

attempt to commit suicide, or participates in a physical act by which another person commits or attempts to commit suicide.;

10. La. Stat. Ann. § 32.12 – A. Criminal assistance to suicide is: (1) the intentional advising or encouraging of another person to commit suicide or the providing of the physical means or the knowledge of such means to another person for the purpose of enabling the other person to commit or attempt to commit suicide. (2) the intentional advising, encouraging, or assisting of another person to commit suicide, or the participation in any physical act which causes, aids, abets, or assists another person in committing or attempting to commit suicide.;

11. 17A Me. Rev. Stat. Ann. § 204 – 1. A person is guilty of aiding or soliciting suicide if he intentionally aids or solicits another to commit suicide, and the other commits or attempts suicide.;[17]

12. Mich. Comp. Laws Ann. § 750.329a – (1) A person who knows that an individual intends to kill himself or herself and does any of the following with the intent to assist the individual in killing himself or herself is guilty of criminal assistance to the killing of an individual, a felony . . .: (a) Provides the means by which the individual attempts to kill himself or herself. (b) Participates in an act by which the individual attempts to kill himself or herself or kills himself or herself. (c) Helps the individual plan to attempt to kill himself or herself or to kill himself or herself.;

13. Minn. Stat. Ann. § 609.215 – Subdivision 1. Aiding suicide. Whoever intentionally advises, encourages, or assists another in taking the other's own life [commits a felony].;

14. Miss. Code Ann. § 97-3-49 – A person who wilfully, or in any manner, advises, encourages, abets, or assists another person to take, or in taking, the latter's life, or in attempting to take the latter's life, is guilty of a felony . . .;

15. Mo. Rev. Stat. Ann. § 565.023 – 1. A person commits the crime of voluntary manslaughter if he: . . . (2) Knowingly assists another in the commission of self-murder.;

16. Neb. Rev. Stat. Ann. § 28-307 – (1) A person commits assisting suicide when, with intent to assist another person in committing suicide, he aids and abets him in committing or attempting to commit suicide.;

---

[17] 17A Me. Rev. Stat. Ann. § 204 further provides that "[a]iding or soliciting suicide is a Class D crime." 17A Me. Rev. Stat. Ann. § 4-A indicates that a Class D crime is punishable by imprisonment for more than one but not more than three years.

17. N.M. Stat. Ann. § 30-2-4 – Assisting suicide consists of deliberately aiding another to take his own life.[18];

18. N.D. Cent. Code § 12.1-16-04 – Any person who intentionally or knowingly aids, abets, facilitates, solicits, or incites another person to commit suicide, or who provides to, delivers to, procures for, or prescribes for another person any drug or instrument with knowledge that the other person intends to attempt to commit suicide with the drug or instrument is guilty of a Class C felony.;

19. 40 N.Y. Penal Law § 125.15 - A person is guilty of manslaughter in the second degree when: * * * (3) He intentionally causes or aids another to commit suicide.;

20. Okla. Stat. Ann. Tit. 21, § 813 – Every person who willfully in any manner, advises, encourages, abets, or assists another person in taking his own life, is guilty of aiding suicide.;

21. Ore. Rev. Stat. Ann. § 163.125 – (1) Criminal homicide constitutes manslaughter in the second degree when: . . . (b) A person intentionally causes or aids another to commit suicide[.];

22. 18 Pa. Cons. Stat. Ann. § 2505 – (b) A person who intentionally aids or solicits another to commit suicide is guilty of a felony of the second degree if his conduct causes such suicide or an attempted suicide . . ..;

23. S.D. Codified Laws Ann. § 22-16-37 – Any person who intentionally in any manner advises, encourages, abets, or assists another person in taking or in attempting to take his or her own life is guilty of a Class 6 felony.;

24. Wash. Rev. Code Ann. § 9A.36.060 – (1) A person is guilty of promoting a suicide attempt when he knowingly causes or aids another person to attempt suicide.;

25. Wis. Stat. Ann. § 940.12 – Whoever with the intent that another take his or her own life assists such person to commit suicide is guilty of a Class H felony.

The following State statutes indicate more narrowly and specifically that aiding or assisting

suicide means providing the physical means or participating in a physical act resulting in suicide or

---

[18] In *State v. Sexon*, 117 N.M. 113, 116, 869 P.2d 301, 304 (N.M.Ct.App. 1994), the Court stated that "[i]t is well accepted that 'aiding', in the context of determining whether one is criminally liable for their involvement in the suicide of another, is intended to mean providing the means to commit suicide, not actively performing the act which results in death."

causing suicide:

1. Ga. Code Ann. § 16-5-5 – (a) As used in this Code section, the term: (1) "intentionally and actively assisting suicide" means direct and physical involvement, intervention, or participation in the act of suicide which is carried out free of any threat, force, duress, or deception and with understanding of the consequences of such conduct. * * * (b) Any person who publicly advertises, offers, or holds himself or herself out as offering that he or she will intentionally and actively assist another person in the commission of suicide and commits any overt act to further that purpose is guilty of a felony . . ..;

2. Hawaii Stat. § 707-702 – (1) A person commits the offense of manslaughter if: * * * (b) The person intentionally causes another person to commit suicide.;

3. 720 Ill. Comp. Stat. Ann. 5/12-31 – (a) A person commits the offense of inducement to commit suicide when he or she does . . . the following: * * * (2) With knowledge that another person intends to commit or attempt to commit suicide, intentionally (i) offers and provides the physical means by which another person commits or attempts to commit suicide, or (ii) participates in a physical act by which another person commits or attempts to commit suicide.

4. Ind. Code Ann. § 42-1-2.5 – (b) A person who has knowledge that another person intends to commit or attempt to commit suicide and who intentionally does either of the following commits assisting suicide, a Class C felony: (1) Provides the physical means by which the other person attempts or commits suicide. (2) Participates in a physical act by which the other person attempts or commits suicide.

5. Kan. Stat. Ann. § 21-3406 – (a) Assisting suicide is: . . .(2) with the intent and purpose of assisting another person to commit or attempt to commit suicide, knowingly . . . (B) participating in a physical act by which another person commits or attempts to commit suicide.;

6. Ky. Rev. Stat. Ann. § 216.302 – (2) A person commits a Class D felony when the person, with the purpose of assisting another person to commit or attempt to commit suicide, knowingly and intentionally . . . (b) Participates in a physical act by which another person commits or attempts to commit suicide.;

7. MD Code, Criminal Law, § 3-102 – With the purpose of assisting another to commit or attempt suicide, an individual may not: * * * (3) knowingly participate in a physical act by which another individual commits or attempts to commit suicide.[19]

---

[19] MD Code, Criminal Law, § 3-104 provides that "An individual who violates this subtitle is guilty of a felony and on conviction is subject to imprisonment not exceeding 1 year or a fine not

8. N.J. Stat. Ann. § 2C:11-6 – A person who purposely aids another to commit suicide is guilty of a crime of the second degree if his conduct causes such suicide or attempted suicide, and otherwise a crime of the fourth degree.;

9. R.I. Gen. Laws § 11-60-3 – An individual . . . who with the purpose of assisting another person to commit suicide knowingly: * * * (2) participates in a physical act by which another person commits or attempts to commit suicide is guilty of a felony . . ..;

10. S.C. Code Ann. § 16-3-1090 – (B) It is unlawful for a person to assist another person in committing suicide. A person assists another person in committing suicide if the person: * * * (2) has knowledge that the other person intends to commit or attempt suicide and intentionally * * * (b) participates in a physical act by which the other person commits or attempts to commit suicide.;

11. Tenn. Code Ann. § 39 -13-216 – (a) A person commits the offense of assisted suicide who: * * * (2) Intentionally participates in a physical act by which another person directly or intentionally brings about such person's own death; and (3) . . . participates in the physical act with: (A) Actual knowledge that the other person intends to bring about such other person's own death; and (B) The clear intent that the other person bring about such person's own death.

The Court finds that Montana's enactment falls within this category as well. Montana Code Ann. § 45-5-105 provides that "(1) A person who purposely aids or solicits another to commit suicide, but such suicide does not occur, commits the offense of aiding or soliciting suicide." The annotations state that "a person may be convicted of Criminal Homicide . . . for causing another to commit suicide – notwithstanding the consent of the victim." It therefore appears that aiding a suicide is not a felony in Montana but causing one is. The Court further finds that New Hampshire's and Texas' statutes also fall in this category. 17. N.H. Rev. Stat. Ann. § 630:4 proves that "I. A person is guilty of causing or aiding suicide if he purposely aids or solicits another to commit suicide. II. Causing or aiding suicide is a class B felony if the actor's conduct causes such suicide or an attempted suicide. Otherwise it is a misdemeanor." Tex. Penal Code Ann. § 22.08 provides that "(a) A person

---

exceeding $10,000 or both."

commits an offense if, with the intent to promote or assist the commission of suicide by another, he aids or attempts to aid the other to commit or attempt to commit suicide. (b) An offense under this section is a Class C misdemeanor unless the actor's conduct causes suicide or attempted suicide that results in serious bodily injury, in which event the offense is a state jail felony."[20] Basically, under New Hampshire and Texas law as under Montana law, conduct causing suicide is felonious. All other conduct in aid of one who commits suicide which does not actually cause the suicide is a misdemeanor.

Relator is accused of aiding, abetting and counseling Ms. Toole's suicide in Ireland. It is not charged, nor is it evident, that he provided the physical means or participated in a physical act which resulted in Ms. Toole's suicide or caused it. It is evident that Relator advised Ms. Toole in advance respecting how to accomplish her suicide, practiced it with her and was present and communicated with Ms. Toole as she was committing suicide encouraging her to put out her cigarette. This conduct is sufficient to support the charges of aiding and abetting and counseling Ms. Toole's suicide in Ireland. It is not sufficient to support a charge that he participated materially in any physical act which resulted in Ms. Toole's suicide or caused it. Having utilized as broad a notion as possible of what legally constitutes "aiding" and "causing" in order to conform to the liberality requirements of the Treaty and the law, the Court finds that the laws of the 25 States set forth in the first category incorporate both aiding and causing suicide and therefore include conduct such as

---

[20] In *Goodin v. State*, 726 S.W.2d 956, 958 (Tex. App. 1987), *aff'd en banc*, 750 S.W.2d 789 (Tex. Crim. App. 1988), the Court stated that "[w]e believe the aiding suicide statute encompasses action which indirectly contributes to another's voluntary suicide, such as providing access to poison or a gun. We do not believe that this offense includes action on the part of an accused which directly causes the death of another, even if done at the deceased's request. * * * Aiding suicide, therefore, requires proof of an element, action that indirectly allows or encourages another to kill himself, which is not included in murder."

Relator's indirect, secondary participation in Ms. Toole's suicide. The Court finds that the laws of these States are therefore "substantially analogous", "relate to the same general offense" and generally criminalize the same conduct which Relator is charged with committing in Ireland. The laws of the 14 States set forth in the second category require more direct and primary involvement in the suicide act and are therefore not "substantially analogous", do not "relate to the same general offense" and generally do not criminalize the same conduct which Relator is charged with committing in Ireland. Adding together the 14 States in the second category and those States which have no statutes at all making aiding, abetting, assisting and counseling suicide felonious, the Court finds that 25 States do not have laws which are "substantially analogous", "relate to the same general offense" and generally criminalize the same conduct which relator is charged with committing in Ireland. In the words of the Supreme Court in <u>Factor</u> as discussed above, the Court cannot find that aiding and abetting and counseling suicide as charged in Ireland are "generally recognized as criminal" in the laws of the States. Assuming more narrowly that "aiding" is equivalent to "causing" by providing the physical means to commit suicide as the State Court decisions noted above indicate, the strong majority of the States' statutes would not be "substantially analogous."[21] The Court finds that the conduct with which Relator is charged in Ireland is not made

---

[21] As stated above, in its legal research, the Court has found no State Court decisions indicating that conduct such as Relator is accused of committing in Ireland was prosecuted and very few discussing the applicability of State laws making assisting suicide a crime. *See* Note, "Criminal Liability for Assisting Suicide," 86 Colum. L. Rev. 348, 358 (1986)("The only reported state court decisions that discuss assistance statutes are largely rejections of efforts by murder defendants to obtain a reversal of their convictions because of the trial court's failure to give jury instructions implicitly or explicitly  based on these statutes. Indeed, from 1930 to 1985, not one state court decision on an actual prosecution for suicide assistance appears in an official state reporter.") The Court gathers from its study that only more serious conduct intended to cause suicide and amounting to manslaughter or murder is prosecuted. The Court regards this circumstance generally supportive of its decision in this case that the preponderance of the States do not criminalize the Relator's

felonious under the law of the preponderance of States and concludes that dual criminality therefore does not exist.

It is therefore hereby **ORDERED** that the United States' request to extradite Relator is **DENIED,** and the United States Marshal Service is directed to release Relator from custody.

The Clerk is directed to send a copy of this Order to Relator, counsel of record and the United States Marshal in this District.

ENTER: October 26, 2007.

R. Clarke VanDervort
United States Magistrate Judge

*Counsel for the United States:*

Philip H. Wright, Esquire
Assistant United States Attorney
Post Office Box 1713
Charleston, West Virginia 25326-1713
(304) 345-2200

*Counsel for Relator:*

Edward H. Weis, Esquire
Assistant Federal Public Defender
300 Virginia Street East
Charleston West Virginia 25301
(304) 347-3350

---

conduct underlying the charges against him in Ireland.